**CHARLIMA, INC., a Nebraska Corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 88–1446.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided April 25, 1989.

Thomas J. Monaghan, Omaha, Neb., for appellant.

Paul W. Madgett, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before ARNOLD and JOHN R. GIBSON, Circuit Judges, and ROSENBAUM,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Charlima, Inc. appeals from an adverse summary judgment entered on its claim against the United States under the Feder-

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

al Tort Claims Act. Charlima purchased an airplane requiring an airworthiness inspection, which was performed by J.L. Williams, a designated airworthiness representative. Charlima claimed that Williams acted as a federal employee and was negligent in failing to discover a damaged wing spar which caused the airworthiness certificate to be withdrawn pending repairs. The district court[1] determined that the United States was immune from tort liability under the "discretionary function exception" to the Tort Claims Act. 28 U.S.C. § 2680. We find it unnecessary to reach this issue, however, as we conclude from a review of the record before us that Williams was not a federal employee and that the government is therefore not liable under the Tort Claims Act. We affirm the district court's decision to grant the government's motion for summary judgment.

Charlima purchased a 1974 Beechcraft Duke aircraft for $102,000 from a seller in McKinney, Texas. The purchase agreement and federal law required an airworthiness inspection, which was performed by J.L. Williams. Williams was a designated airworthiness representative authorized to make such inspections under 14 C.F.R. § 183.33 (1988).[2] Williams performed a physical inspection and approved the plane on November 10, 1984, and the Federal Aviation Administration issued a certificate of airworthiness. The plane was then flown from Texas to Omaha, Nebraska, where, on November 27, 1984, Charlima discovered that the plane's wing spars

were damaged. Consequently, the FAA grounded the plane and withdrew its airworthiness certificate. After the plane was repaired, the FAA renewed its certificate on March 1, 1985.

Charlima brought this action alleging that Williams was negligent in failing to discover the damaged wing spars. Charlima claimed damages in the amount of $369,000 for the loss of use of the aircraft and the cost of placing it into airworthy condition.

The United States moved for summary judgment. In an accompanying affidavit, the FAA's Director of the Office of Airworthiness stated that the Office develops criteria setting forth minimum safety standards for aircraft manufacture and design, and determines qualification criteria and procedures for selecting designated representatives. The FAA is authorized to delegate responsibility to private individuals to act as representatives of the administrator. The Director stated that this delegation of FAA duties became necessary as a result of the proliferation of requests for certification services. The Director declared that in his opinion these delegated Representatives were not employees of the FAA.[3]

The district court record reflects that Charlima, although given time to depose Williams, failed to file Williams' deposition or other factual materials in response to the government's summary judgment motion. The district court found it unneces-

---

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

2. 14 C.F.R. § 183.33 provides:
   A Designated Airworthiness Representative (DAR) may, within limits prescribed by and under the general supervision of the Administrator, do the following:
   (a) Perform examination, inspection, and testing services necessary to the issuance of certificates, including issuing certificates, in the areas of maintenance, manufacturing, and engineering as may be authorized by the Director of Airworthiness.
   (b) Charge a fee for his or her services.
   (c) Perform authorized functions at any authorized location.

3. The government's motion also attached excerpts from the Federal Register in which the

FAA discussed the role of designated aircraft representatives, see 48 Fed.Reg. 16176 (April 4, 1983), and a law review article suggesting that private individuals delegated to perform FAA duties should not be considered government employees, see Dilk, Negligence of Federal Aviation Administration Delegates Under the Federal Tort Claims Act, 42 J. Air Law and Commerce 575 (1976). Also attached to the government's motion was an unpublished order from the Northern District of Texas. While this order addressed issues similar to those here and held that a designated representative was not a government employee and that the claim was barred by the discretionary function exception, we do not give precedential weight to unpublished opinions or orders. See 8th Cir.R. 8(i).

sary to determine whether Williams was an employee of the federal government, but determined that the FAA was exercising its regulatory authority by delegating inspection duties to designated representatives. Applying the discretionary function exception, the district court granted the government's motion for summary judgment. Charlima contends on appeal that the government is liable under the Tort Claims Act, claiming that the discretionary function exception is inapplicable here and that Williams is a federal employee.

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In passing upon a motion for summary judgment, we must give the non-moving party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings and affidavits. *See Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 571 (8th Cir.1988); *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987). Once a motion for summary judgment is made, however, the nonmoving party cannot simply rest on the allegations of the complaint, but must come forward with specific facts to demonstrate a genuine issue for trial. *See Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984); *Bouta v. American Fed'n of State, County & Mun. Employees*, 746 F.2d 453, 454 (8th Cir. 1984), *cert. denied*, 470 U.S. 1056, 105 S.Ct. 1764, 84 L.Ed.2d 825 (1985). Because Charlima did not respond to the government's motion for summary judgment with deposition or other factual materials, the district court was justified in relying solely on the evidence the government attached to its motion.[4] Based upon a review of the record before us, we are satisfied that the government's summary judgment motion was properly granted.

A suit may be brought against the United States under the Federal Tort Claims Act for damages arising from the injury or loss of property caused by the negligent or wrongful acts of any employee of the government while acting within the scope of employment. *See* 28 U.S.C. § 1346(b). Williams' conduct can only subject the federal government to liability if he is found to be a federal employee. We are satisfied that this threshold issue of whether or not Williams was a federal employee must be decided adversely to Charlima. Thus, it is unnecessary for us to address the discretionary function exception upon which the district court based its decision. While the district court did not reach the employment issue, we may affirm on any ground supported by the record, *Brown v. St. Louis Police Dept.*, 691 F.2d 393, 396 (8th Cir. 1982), and the parties have briefed the issue before this court. Because Charlima filed no factual materials with the district court, our analysis is based on those materials attached to the motion filed by the government.

Under 28 U.S.C. § 2671, an "employee of the government" includes "officers or employees of any federal agency ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." Section 2671, however, explicitly eliminates from government liability the acts of an independent contractor.[5]

The crucial element in determining whether an individual may be considered a

---

4. Throughout the year following the date the government filed its motion for summary judgment, Charlima requested four extensions of time to depose Williams, the painter working on the plane following the inspection, and the pilot flying it from Texas to Nebraska, and to file a written opposition to the motion for summary judgment, which the district court granted. Evidently Williams was never located. Finally on February 11, 1988, Charlima had still not filed a response and the district court granted the government's summary judgment motion.

5. To distinguish between a federal employee and an independent contractor, courts have relied on the factors set out in *Restatement (Second) of Agency* §§ 2 & 220 (1957). *See, e.g., United States v. Orleans*, 425 U.S. 807, 815 n. 4, 96 S.Ct. 1971, 1976 n. 4, 48 L.Ed.2d 390 (1976); *Wood v. Standard Products Co.*, 671 F.2d 825, 829 (4th Cir.1982); *Marival, Inc. v. Planes, Inc.*, 306 F.Supp. 855, 857 (N.D.Ga.1969).

federal employee is the amount of control the federal government has over the physical performance of the individual. *See United States v. Orleans,* 425 U.S. 807, 814–15, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *see also Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). In *Orleans,* the Supreme Court held that a community action agency was not a federal instrumentality or agency and that its employees were not employees of the federal government for purposes of the Federal Tort Claims Act, because the day-to-day operations of the agency were not supervised by the federal government. Likewise, we conclude that the FAA does not control the day-to-day operations of designated airworthiness representatives. The FAA defined its duties concerning designated representatives as follows: "Review of all official forms initiated by a [designated representative]; random post-audit inspections of products which have been certificated by a [designated representative]; accompanying a [designated representative] during the inspection of a product to ensure that satisfactory techniques, methods and procedures are being used * * *." 48 Fed.Reg. 16176, 16177 (April 14, 1983). Thus, while the FAA acts generally as an overseer, it does not manage the details of a designated representative's work or supervise him in his daily investigative duties.

Moreover, according to the Director of the Office of Airworthiness for the FAA, the FAA has no customary contractual relationship with designated representatives, nor are they on the FAA payroll or otherwise compensated by the FAA. Instead, a designated representative is paid by the certificate applicant, which may elect to use her to inspect its aircraft at its own cost or choose instead to allow FAA personnel to inspect its aircraft in accordance with existing FAA practice. *See* 48 Fed.Reg. at 16179. The FAA provided for the delegation of these inspection duties not only to reduce governmental costs, but also to ease "the burden of regulation on the aviation community by expediting the * * * issuance of requested certifications." *Id.* at 16176. These factors further illustrate the designated representative's independence from direct FAA supervision and control.

Charlima argues that because the government has promulgated specific regulations governing the inspection process, it exercises control over designated representatives. The existence of such regulations, however, does not establish the FAA's power to control day-to-day inspection duties. In *Orleans* the Court examined extensive regulations and guidelines governing the operations of a community action agency and stated that "[t]he regulations do not give the OEO power to supervise the daily operation of a community action agency." 425 U.S. at 818, 96 S.Ct. at 1977. While Williams was obliged to comply with the FAA regulations, Charlima has not shown sufficient "control" over the daily operation of inspection of the aircraft to establish that Williams was an employee under the *Orleans* analysis.

Further, the Supreme Court has considered congressional intent to be an important factor in testing the extent of federal power over an individual. *Orleans,* 425 U.S. at 817, 96 S.Ct. at 1977. The legislative history of the Civil Aeronautics Act indicates that if Congress did not allow delegation of inspection to private persons, the Civil Aeronautics Administration would be required to employ 10,000 additional personnel.[6] *See* S.Rep. No. 803, 81st Cong., 1st Sess. 3 (1949). The fact that Congress rejected this alternative and authorized the delegation of FAA inspection duties to private persons supports our conclusion that Congress did not intend to bring designated aircraft representatives within the scope of federal employment.

Additionally, were the United States liable for the acts of these designated representatives, every governmental attempt to enhance the safety of the workplace or a

---

6. In 1958, the Civil Aeronautics Administration was replaced by the Federal Aviation Agency, which in 1967 became a component of the De-partment of Transportation and is now the Federal Aviation Administration. *See* 49 U.S.C.App. § 106 (1982).

transportation system could lead to government tort liability, and the effect "would be to make the Government a joint insurer of all activity subject to safety inspection." *Garbarino v. United States,* 666 F.2d 1061, 1066 (6th Cir.1981). This concern was recently articulated by the First Circuit:

> Certainly whether the Congress should take a more active role in providing compensation for the victims of air disasters is not an appropriate question for this court to decide. Moreover, to attempt to expand the relief available to victims and their families through the Federal Tort Claims Act in circumstances similar to those of this case would, we believe, have an unfortunate inhibiting effect on government safety measures. The end result of attaching liability to government attempts at all levels to supplement the safety precautions of private individuals and businesses, even when there is no reliance on the government's assistance, is far more likely to increase the reluctance of the government to involve itself in such matters * * *.

*Zabala Clemente v. United States,* 567 F.2d 1140, 1150 (1st Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978).

Under the facts in this case, we therefore hold as a matter of law that Williams was not an employee of the federal government for purposes of the Federal Tort Claims Act when he inspected Charlima's aircraft. Accordingly, this suit cannot be brought under the Tort Claims Act. We affirm.