Ronald FODERBERG, Marsha K.
Foderberg, Laurie Foderberg, and
Sara Foderberg, Plaintiffs,

v.

UNITED STATES OF AMERICA,
Defendant.

No. 4–00–CV–90130.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 10, 2001.

Neven J Mulholland, Johnson Erb &
Latham, Fort Dodge, IA, for plaintiffs.

Gary L Hayward, Asst. U.S. Atty, Des
Moines, IA, for defendant.

## ORDER

PRATT, District Judge.

On May 18, 2000, the Defendant United States of America ("the government") filed a motion to dismiss Plaintiffs' negligence and loss of consortium claims filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), 28 U.S.C. § 2671 *et seq*. By Order dated July 20, 2000, this Court deferred ruling on that question pending further discovery as to subject matter jurisdiction. The Plaintiffs requested and received extra time to conduct additional discovery solely on the issue of jurisdiction. Their supplemental brief regarding jurisdiction was filed on July 16, 2001. The government filed its responsive papers on August 6, 2001. No additional argument is necessary. The Court considers the matter submitted.

### I. Facts

The Plaintiffs are Ronald Foderberg ("Mr. Foderberg" or "the Plaintiff"), his wife Marsha Foderberg, and their two children, Laurie and Sara Foderberg. Mr. Foderberg at all relevant times to this lawsuit was an electrician employed by Iowa State University ("ISU"). On March 27, 1998, the Plaintiff was instructed to examine a smoke detector located near a large industrial fan that supplied air to the ventilation system of an energy research facility ("the facility") located on the ISU campus in Ames, Iowa. The fan had been turned off, but had not ceased spinning when the Plaintiff approached the smoke detector in question. The fan did not have a safety guard attached to it. The Plaintiff's jacket and shirt became entangled in the fan, and he suffered severe injuries to his arm, shoulder, and face.

Research at the facility is conducted on behalf of the United States Department of Energy ("DOE").[1] The facility is operated by ISU under contract with the government. Among other matters, the contract governs the safety and maintenance of the facility.

The Plaintiffs seek to hold the government liable as a result of its own negligence. Specifically, the Complaint, as amended, alleges that the government was negligent in the following way:

1. In failing to identify and install a cover or guard on the exposed rotating shaft of the ventilation fan;

2. In failing to have an integrated safety management program to identify and analyze all hazards and to conduct adequate work planning and to establish appropriate hazard controls;

3. In failing to warn Mr. Foderberg of dangerous and hazardous conditions upon the premises, including the exposed rotating shaft of the ventilation fan;

4. In failing to exercise reasonable care in the design and construction of the Defendant's laboratory facility located on the campus of Iowa State University; and

5. In failing to require its contractor, Iowa State University, to comply with DOE policies and regulations, federal regulations and applicable safety standards so as to ensure workmen's safety, as required by the terms and provisions of the contract entered into between Iowa State University and the DOE.

The Court's sole task is to determine if subject matter jurisdiction exists over this case. Resolution of that question turns on

---

**1.** The terms "Defendant," "government," and "DOE" may be used interchangeably throughout this Order.

the applicability of certain provisions of the FTCA.

## II. Legal framework under the FTCA

Under the FTCA, the government may be held liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■■■ The FTCA, however, contains an important exception relevant to this case. The government cannot be held liable for "discretionary" functions or duties performed by its employees. 28 U.S.C. § 2680(a). If a claim falls within this so-called "discretionary function" exception, the Court has no subject matter jurisdiction over the case.[2] *See Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir.1998).

The Supreme Court has stated that "discretionary" acts that are immune from liability are those that "involve an element of judgment of choice," *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (internal bracket and citations omitted), and which are "grounded in social, economic, and political policy," *id.* at 323, 111 S.Ct. 1267. *See also Dalehite v. United States,* 346 U.S. 15, 34, 36, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) ("discretionary" refers to the "discretion of the executive or the administrator to act according to one's judgment of the best course"; "[w]here there is room for policy judgment and decision there is discretion."), *called into question on other grounds by, Rayonier Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).

In terms of non–discretionary conduct, "[t]he requirement of judgment or choice is not satisfied [and therefore the government may be held liable] if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to adhere to the directive." *Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267 (internal quotations omitted). "[I]t is the nature of the conduct, rather than the status of the actor that governs whether the exception applies." *Id.* (citing *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (internal quotations omitted)).

■■■ Where inspection or investigatory responsibilities are at issue, the government may be liable for foregoing these responsibilities. *See Appley Bros. v. United States,* 164 F.3d 1164, 1172 (8th Cir. 1999) ("although a federal grain inspector had discretion in deciding how he would investigate the status of a certain type of grain, he had no discretion no to undertake some investigation."); *cf. Audio Odyssey, Ltd. v. United States,* 255 F.3d 512, 519 (8th Cir. 2001) (government liable for not

---

**2.** As an additional basis for dismissal, the government argues that it cannot be held liable for the negligent acts of "independent contractors," namely the ISU officials who were responsible for the day-to-day running of the research facility in question. Under the FTCA, the government is immune from damages arising from acts of "any contractor with the United States." *See* 28 U.S.C. § 2671. In this case, the Plaintiffs are not seeking to hold the government liable based on the conduct of an asserted independent contractor. Rather the Complaint seeks to hold the government directly responsible for its own negligence. Thus, this case is not dismissible based on the independent contractor exception. *See Audio Odyssey, Ltd. v. United States,* 255 F.3d 512, 520 (8th Cir. 2001) (complaint alleged negligence "on the part of the [government agency] itself" and as a result the case could not be dismissed on "independent contractor" grounds).

performing certain mandated procedural steps regarding the liquidation of assets under a federal loan program). Thus, to the extent federal actors fail to perform a mandated inspection, then the discretionary function exception will not apply and a court will have jurisdiction to hear the case on the merits.

## III. Discussion

■ The Court has reviewed the extensive record tendered by the parties and finds that in important respects, the government failed to perform federally mandated requirements related to the safety of the research facility in question. For example, it was DOE policy that all DOE operations "must be performed in a manner which provides reasonable assurance that workers ... are adequately protected." Pls.' App. at 0019 (1/28/97 DOE policy statement). "The ultimate responsibility and accountability for ensuring adequate protection in the operation of DOE facilities ... rests with the DOE line management." *Id.* "DOE's safety management functions, responsibilities and authorities for ensuring adequate protection and safe operations cannot be delegated to contractors." *Id.* Thus, even though a contractor may operate a government-owned facility, the "DOE is totally responsible for all aspects of safety management" at such facilities. *Id.* at 0026 (10/8/97 DOE safety manual). The DOE's regional office located in Chicago ("the Chicago office") had primary responsibility for implementing the government's safety mandates at the Ames facility.

In early 1992, the DOE undertook what was termed a "Tiger Team Assessment" of the DOE research facilities at the Ames facility. In relevant part, the Tiger Team reviewed its facilities to assess compliance with federal safety guidelines, as well as critique the performance of federal oversight. The 1992 assessment took to task the DOE's Chicago office for not adequately performing its oversight responsibilities of the Ames facility. One key finding was that "Ames does not currently have a comprehensive, fully integrated, environmental, safety, and health program which meets the requirements, objectives and expectations set forth by the Secretary of Energy." Pls.' App. at 0115 (DOE Tiger Team report of 3/92). The DOE's "Chicago Field Office nor Ames have conducted the sustained and vigorous oversight necessary to ensure the application of DOE [safety] requirements to the operations of Ames." *Id.* at 0115. The Chicago office had implemented "no formal, uniform, procedural requirements for managers to conduct oversight reviews" of work sites. *Id.* at 0117. These deficiencies contributed to a host of noncompliance issues at the Ames facility, key among them was general noncompliance with machinery and machine guarding. *See id.* at 0124 ("Ames Laboratory does not comply with all requirements of 29 CFR 1910, Subpart O, Machinery and Machine Guarding.").[3]

After Mr. Foderberg's accident, a DOE investigation revealed that the deficiencies identified in 1992 by the Tiger Team had not been corrected, as both the DOE's Chicago Office and ISU officials "[f]ail[ed] to identify the exposed rotating shaft in the fan room." *See* Pls.' App. at 0163

---

**3.** According to federal regulations governing general requirements for "machine guarding," "[o]ne or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, two-hand tripping devices, electronic safety devices, etc." 29 C.F.R. § 1910.212(a)(1).

(DOE's Investigation Board Report of April 1998). "Corrective actions for previous assessment findings," concluded the DOE, "failed to prevent recurrence of machine guarding deficiencies." *Id.* at 0164. "No specific training was provided for working on, or near, rotating parts." *Id.* at 0165. Significantly, the DOE's 1998 investigation concluded, among other things, that the Ames facility "is operating without an integrated safety management system." *Id.* at 0163. Much of the blame for this state of affairs regarding safety conditions at the Ames facility was placed squarely on the shoulders of the DOE's Chicago office.

It is true that many of the documents submitted for this motion show that the government could exercise discretion in how best to implement and oversee safety standards at the Ames facility. However, as outlined above, in certain critical respects, certain safety concerns were not discretionary and were mandated under DOE policy or regulations. Thus, while federal officials could exercise discretion in how best to implement an integrated safety management system, they had no discretion not to have one in place. Nor did federal officials have a choice in not making sure guards were installed over exposed rotating parts. *See McMichael v. United States,* 856 F.2d 1026, 1033 (8th Cir.1988) (although initial discretion granted by the Defense Department's regulations was broad, the inspectors violated the Department's own policy directives by failing to comply with mandated safety requirements; held: discretionary function exception not applicable and government liability could attach).

Based on the Court's review of the record, the Plaintiffs have demonstrated that certain federally mandated safety requirements were not performed by federal officials at the Ames facility. And to this extent, the government's actions in over-

seeing and implementing safety requirements were not discretionary. The "discretionary function" exception does not apply. The Plaintiffs have satisfied their burden of establishing the Court's jurisdiction over this FTCA case.

### IV. Conclusion

The Defendant's motion to dismiss for lack of subject matter jurisdiction is hereby **DENIED.**

Pursuant to 28 U.S.C. § 1292(b), the Court notes that it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

**IT IS SO ORDERED.**