**Jonathon SMITH, by and through his guardian ad litem, Jim FITZSIMMONS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 4:06–cv–019.**

United States District Court,
D. North Dakota,
Northwestern Division.

July 17, 2007.

Dennis Edward Johnson, Johnson Law Office, Watford City, ND, Clint Sargent, Mark V. Meierhenry, Danforth & Meierhenry LLP, Sioux Falls, SD, for Plaintiff.

David L. Peterson, U.S. Attorney's Office, Bismarck, ND, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Dismiss and Motion for Summary Judgment filed on February 28, 2007. The plaintiff filed a response in opposition to the motion on April 30, 2007, and the defendant filed a reply brief on May 8, 2007. For the reasons outlined below, the Court grants the motion.

## I. *BACKGROUND*

On June 18, 2003, the plaintiff, twelve-year-old Jonathon Smith (Smith), was playing a game with a friend, P.W.,[1] that involved pouring gasoline onto the back tire of Smith's bicycle, lighting the tire with a match, and mounting and riding the bicycle. *See* Docket No. 1, ¶¶ 12–18. Smith was severely burned when, while riding the lit bicycle, P.W. threw more gasoline at the bike and set both Smith and the bike on fire. *Id.* at ¶¶ 17–18. Although at least one adult observed the boys pouring gasoline on their bicycles and igniting them, no one reported the conduct to Bureau of Indian Affairs (BIA) law enforcement until after Smith was injured. *See* Docket No. 20–2.

The incident took place in the backyard of Timothy Whitebody, Jr., and/or Ardis Whitebody (Whitebody), in Drags Wolf Village on the Fort Berthold Reservation near New Town, North Dakota. *See* Docket No. 1. The Plaintiff contends that, at the time of the incident, there were several non-operating, abandoned motor vehicles in the backyard of Whitebody's housing unit where the boys were playing. *Id.* at ¶ 15. The gasoline the boys used to ignite their bicycles was allegedly obtained from a gasoline container found inside one of the non-operating vehicles. *See* Docket No. 30–17. The plaintiff contends that the BIA is liable for Smith's injuries because of the BIA's failure to enforce tribal ordinances concerning abandoned vehicles.

The BIA is a federal agency operating under the United States Department of Interior. In 2003, the BIA employed approximately nine law enforcement officers

---

**1.** The friend with whom Smith was playing on June 18, 2003, is also a juvenile. To protect his privacy he will be referred to by his initials, P.W.

who were assigned to Fort Berthold and the surrounding community. *See* Docket No. 20–8. The BIA also funded one contract criminal investigator who investigated major crimes on the Fort Berthold Reservation. *Id.* Pursuant to a Memorandum of Understanding between the Three Affiliated Tribes and the BIA, the BIA assumed the role of enforcing all tribal laws in addition to federal laws and regulations. *See* Docket No. 30.

The BIA and Three Affiliated Tribes law enforcement officers are charged with the responsibility to patrol and police just under one million acres of land in six counties. *See* Docket No. 35. In 2003, when this incident occurred, there were between nine and twenty Three Affiliated Tribes law enforcement officers available to manage the workload generated by the roughly 3,700 residents plus non-residents who work on or visit the reservation. *See* Deposition of Harmon, Docket No. 36–3, p. 27; Deposition of Sitting Bear, Docket No. 36–9, pp. 47–49; Deposition of Little Swallow, Docket No. 36–6, pp. 61–64.

The Plaintiff's complaint lists five claims against the Government. In response to the motion for summary judgment, the Plaintiff has conceded that the three claims against the United States Department of Housing and Urban Development (HUD), labeled as claims II, III, and IV, may be dismissed. *See* Docket No. 32, p. 1. The remaining two claims are tort claims against the BIA for negligence in failing to enforce tribal laws and for breach of a fiduciary duty.

The Government asserts that it should be granted summary judgment because: (1) the discretionary function exception to liability under the Federal Tort Claims Act bars Smith's claims; (2) the BIA did not owe a fiduciary duty to Smith; and (3) even if the discretionary function exception did not apply, the actions of the BIA were not the proximate cause of Smith's injuries. The Plaintiff responds by contending that the BIA refused to enforce tribal ordinances and BIA regulations and the failure to enforce those laws resulted in the injuries to Smith. *See* Docket No. 32, p. 8.

## II. *LEGAL DISCUSSION*

### A. *STANDARD OF REVIEW FOR RULE 12(b)(1) MOTION TO DISMISS*

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to subject matter jurisdiction. Fed. R.Civ.P. 12(b)(1). Unlike a challenge under Rule 12(b)(6), it is well-established that courts may consider matters outside the pleadings. *Osborn v. United States,* 918 F.2d 724, 729–30 (8th Cir.1990); *Harris v. P.A.M. Transport, Inc.,* 339 F.3d 635, 637 n. 4 (8th Cir.2003). "The trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Further, it is clear that "no presumptive truthfulness attaches to the plaintiff's allegations...." *Osborn,* 918 F.2d at 730 (citations omitted). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *See V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir.2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.,* 891 F.2d 1343, 1346 (8th Cir.1989)).

### B. *DISCRETIONARY FUNCTION EXCEPTION*

The United States, as a sovereign, is immune from suit unless it waives its immunity and consents to be sued. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). The Federal Tort Claims Act waives the federal government's sovereign immunity for certain torts committed by government employees. 28 U.S.C. 1346(b); *Demery v. United States Dept. of Interior,* 357 F.3d 830, 832 (8th Cir.2004). The Federal Tort

Claims Act allows suits against the United States but only to the extent that a private person, under similar circumstances, would be liable to the claimant. Thus, the actions of the BIA can expose the Government to tort liability. However, the waiver of sovereign immunity under the Federal Tort Claims Act is limited. Congress has excepted from this limited waiver "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a case falls within this statutory exception to the Federal Tort Claims Act, the Court lacks subject matter jurisdiction. *See Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir.1984) *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

■ The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Dykstra v. United States Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir.1998). Its purpose is to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). When properly construed, it "protects only governmental actions and decisions based on considerations of public policy." *Id; see Kane v. U.S.,* 15 F.3d 87, 89 (8th Cir.1994) (day-to-day decisions, made in furtherance of the policy, may be protected under the exception). Its application is a jurisdictional issue which precedes any negligence analysis. *Johnson v. U.S., Dept. of Interior,* 949 F.2d 332, 335 (10th Cir.1991). The applicability of the discretionary function excep-

tion is governed by the nature of the conduct at issue, rather than the status of the actor. *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

■ The United States Supreme Court has articulated a two-part test to be applied in determining whether a particular claim falls under the discretionary function exception to the waiver of sovereign immunity. *See United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). To take advantage of the exception, it is incumbent on the Government to show that the employee's action "involve[d] an element of judgment or choice." 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531. If a statute, rule, regulation, or a specific policy dictates the employee's actions, then it cannot be said the employee was exercising discretion. As a result, the exception to the waiver of sovereign immunity does not apply. *Demery v. U.S. Dept. of Interior,* 357 F.3d 830, 832 (8th Cir.2004). The first part of the test requires a determination of whether the challenged act or omission violated a specific statute, rule, regulation, or policy that did not allow for judgment or choice. If so, the discretionary function exception does not apply.

■ If the challenged conduct is determined to be discretionary, the second part of the test is to determine whether the conduct is "of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert,* 499 U.S. 315, 322–323, 111 S.Ct. 1267, 113 L.Ed.2d 335. As previously noted, when Congress enacted the Federal Tort Claims Act, its desire was to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy. The judgment

or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account, in order for the exception to be triggered. *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 796 (8th Cir.1993).

### 1. *WHETHER THE ACTION IS A MATTER OF JUDGMENT OR CHOICE FOR THE GOVERN-MENT EMPLOYEE*

The Court's initial inquiry concerning whether the action is a matter of judgment or choice for the acting Government employee is mandated by the language of the discretionary function exception. *Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* Thus, when a federal statute, rule, regulation, or policy specifically prescribes a course of action for an employee to follow, the exception will not apply. *Id.* Conversely, when no federal mandate is found, the employee's conduct is considered to be the product of judgment or choice and the Court's initial inquiry is satisfied.

Because a motion to dismiss based on the discretionary function exception challenges the Court's subject matter jurisdiction, it is the plaintiff who bears the burden of demonstrating that subject matter jurisdiction exists. *See V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir.2000). It is the plaintiff's burden to produce evidence to support a finding that a regulation sets forth a mandatory limitation on an actor's discretion. *See ALX El Dorado, Inc., v. United States*, 36 F.3d 409, 411–12 (5th Cir.1994); *Johnson v. United States*, 47 F.Supp.2d 1075, 1080 (S.D.Ind.1999).

The Plaintiff contends that the BIA completely ignored the enforcement of certain laws and that the failure to enforce those laws eliminates the discretionary function exception to liability under the FTCA. The discretionary function exception analysis is a jurisdictional issue that precedes any analysis of duty or breach of duty grounded in negligence. *Johnson v. U.S., Dept. of Interior*, 949 F.2d 332, 335 (10th Cir.1991). The relevant inquiry is whether controlling statutes, regulations, and administrative policies mandated that BIA law enforcement employees investigate and enforce, in a specific manner, the violations of crimes and ordinances. *See Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir.1993) (distinguishing between the discretionary function exception and the concept of duty in a negligence analysis).

The Government argues that because of the limited resources of the BIA law enforcement officers, the officers were required to prioritize their work and devote resources according to those priorities. The Plaintiff contends that whether the BIA should enforce the law is not a decision that involves an element of choice and asserts that several sources of law mandated the proper course of action for the BIA in enforcing the law: (1) 25 U.S.C. § 2803; (2) 25 C.F.R. § 12.22; (3) 25 C.F.R. § 11.447 and (4) the Memorandum of Understanding entered into with the Three Affiliated Tribes, the governing body of the Forth Berthold Reservation, in response to Tribal Resolution No. 97–142–DSB.

25 U.S.C. § 2803 provides the authority that may be vested in BIA law enforcement employees and states in part that:

> The Secretary may charge employees of the Bureau with law enforcement responsibilities and may authorize those employees to . . .
>
> (2) execute or serve warrants, summonses, or other orders relating to a

crime committed in Indian country and issued under laws of—

(A) the United States (including those issued by a Court of Indian Offenses under regulations prescribed by the Secretary), or

(B) an Indian tribe, if authorized by the Indian tribe; . . . .

The Plaintiff also cites to the Code of Federal Regulations adopted pursuant to this statutory provision. 25 C.F.R. § 12.22 provides that "BIA officers will enforce tribal laws only with the permission of the tribe. Local programs are encouraged to make arrangements and agreements with local jurisdictions to facilitate law enforcement objectives." 25 C.F.R. § 11.447 provides that "[a] person who permits his or her property to fall into such condition as to injure or endanger the safety, health, comfort, or property of his or her neighbors, is guilty of a violation."

Finally, Smith contends that the governing body of the Three Affiliated Tribes of the Fort Berthold Reservation adopted Tribal Resolution No. 97–142–DSB which not only gave the BIA permission to enforce its tribal laws, but also requested that all laws be enforced. That resolution provides in part:

NOW, THEREFORE, BE IT RESOLVED, That the Tribal Business Council of the Three Affiliated Tribes hereby authorizes and requests that the Bureau of Indian Affairs Branch of the Law Enforcement Services (Fort Berthold Agency) enforce all laws of the Three Affiliated Tribes, effectively (sic) currently and in the future, which are designed and intended by law enforcement authorities.

Smith contends that the BIA accepted this request and entered into a Memorandum of Understanding with the Three Affiliated Tribes agreeing to take on the duty of enforcing all tribal laws. The Memoran-dum of Understanding provides in pertinent part:

The objectives of this [Memorandum of Understanding] are to provide procedural guidelines for the implementation of the law enforcement services program by utilizing the appropriate rules, regulations, tribal laws, and ordinances, and by jointly coordinating all law enforcement activities.

*See* Docket No. 20–9. The Memorandum of Understanding outlines the areas with which the BIA will assist the Tribe which include providing technical assistance, preparing work schedules, providing on-the-job training, and coordinating activities for enrolling new tribal police officers in training at the North Dakota State Training Academy.

The Court finds that the federal statute, regulations, and Memorandum of Understanding cited by the Plaintiff do not mandate the manner in which a BIA law enforcement officer must enforce the laws on the reservation nor do they mandate the priority of enforcement of the laws. 25 U.S.C. § 2803 provides the authority that may be given to BIA law enforcement employees but does not mandate the actions of BIA law enforcement officers. Similarly, the relevant provisions of the Code of Federal Regulations do not mandate the manner in which BIA officers investigate and enforce laws. The Plaintiff correctly points out that the Three Affiliated Tribes entered into a Memorandum of Understanding with the BIA for the joint coordination of law enforcement activities. However, the Memorandum of Understanding provides a general overview of the assistance that the BIA will provide and does not dictate the specific manner in which BIA law enforcement officers should enforce laws. In summary, the provisions cited by the Plaintiff simply provide the general scope of authority that may be

granted to a BIA officer, the authority required by a BIA law enforcement officer before enforcing laws on the reservation, the fact that a public nuisance is considered to be a violation, and a generalized outline of supervisory and training related tasks.

■ In addition to the Plaintiff's assertion that the federal statute, regulations, and Memorandum of Understanding mandate that the BIA enforce all laws on the reservation, the Plaintiff also argues that the Government has cited no case that permits BIA law enforcement officers to ignore and refuse or fail to enforce any particular law. To establish that the actions complained of do not involve an element of judgment or choice, the burden is on the plaintiff to link their claims with any facts, statutes, rules, regulations, or policies that would call into doubt the discretionary nature of the government employee's actions. *Johnson v. United States,* 47 F.Supp.2d 1075, 1080 (S.D.Ind. 1999). Neither party has cited to any specific statutes, rules, regulations, or policies which provide any guidance, or in any way limit the discretion of BIA officers under the facts and circumstances presented in this case. Further, the Court is unaware of any specific statutes, rules, regulations, or policies which mandate the specific manner in which the BIA law enforcement officers must enforce laws on the reservation.

The Court finds that there are no federal or state statutes, rules, regulations, or policies which specifically prescribe a course of action for the BIA to follow in enforcing the laws on the reservation. The Court concludes that in the absence of any specific statute, rule, regulation, or policy which mandates the specific manner in which the BIA must enforce the law, the actions of BIA law enforcement employees must be considered a product of judgment or choice. The federal statutes or regula-

tions at issue impose only general responsibilities and leave law enforcement officers considerable discretion as to when and who they will charge such a violation, and whether the enforcement of any abandoned vehicle or public nuisance ordinances will necessitate removal of the abandoned vehicle. The Court finds that the BIA law enforcement employees acted within their discretion in prioritizing the investigation and enforcement of federal and tribal laws. Therefore, the first step of the discretionary function analysis is satisfied.

### 2. WHETHER THE CONDUCT IS OF THE KIND THAT THE DISCRETIONARY FUNCTION EXCEPTION WAS DESIGNED TO SHIELD

■ Because the BIA law enforcement employees' conduct clearly involved an element of judgment or choice, the Court must next ascertain whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Berkovitz v. U.S.,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531. The Court must make that determination before concluding whether a lawsuit is barred.

■ The only types of judgments that the discretionary function exception were designed to shield are "governmental actions and decisions based on considerations of public policy." *U.S. v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *see Rosebush v. U.S.,* 119 F.3d 438, 444 (6th Cir.1997) (explaining that the requirement for a policy nexus is an objective not a subjective one). The Court must determine whether the adjudication of the Plaintiff's claim would require it to second-guess a governmental policy decision. It is well-established that when a government employee is allowed to exercise discretion, it is presumed that the

employee's acts are grounded in policy when exercising that discretion. *Demery v. U.S. Dept. of Interior,* 357 F.3d 830, 833 (8th Cir.2004) (citing *United States v. Gaubert,* 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). It is the plaintiff who must rebut this presumption otherwise the Court is to presume the decision was based on public policy considerations. *Id.*

Of significant importance is the fact that the Eighth Circuit has specifically held that "[a]lthough the federal government has a duty to enforce the law, the means by which it proceeds to do so are protected by the discretionary function exception to the FTCA." *Abernathy v. United States,* 773 F.2d 184, 188 (8th Cir.1985); *see Redmond v. United States,* 518 F.2d 811, 816–817 (7th Cir.1975) (stating that "the Government has a duty to maintain law and order, but how best to fulfill this duty is wholly within the discretion of its officers, and § 2680(a) excepts from the Act both discretionary functions and discretionary duties"); *Sharp v. United States,* 401 F.3d 440, 447 (6th Cir.2005) (providing that "law-enforcement-staffing decisions by the National Forest Service are of the kind that the discretionary function exception was designed to shield").

The Plaintiff argues that even if the Court determines that the conduct is discretionary, the conduct was not of the kind that the discretionary function was designed to shield. The Plaintiff contends that the conduct was not of the kind that the discretionary function was designed to shield because the BIA violated their mandatory duty by the total inaction or omission of enforcing federal laws, federal regulations, and tribal ordinances. The Plaintiff further contends that a government employee who violates a mandatory policy directive is not protected by the discretionary function exception.

In reaching the issue of whether the conduct was of the kind that the discre-

tionary function was designed to shield, the Court has already found that the actions of the BIA law enforcement officers involved a matter of judgment or choice, and there was no law, rule, regulation, or directive mandating the manner in which BIA employees act. The Plaintiff has provided the same argument for both the first and second parts of the test to determine the applicability of the discretionary function exception. The Plaintiff has not addressed the second step of the discretionary function exception analysis, and has offered no facts challenging the policy-based nature of the BIA employees' decision on how to prioritize law enforcement duties.

The Government contends that decisions which involve the prioritization of law enforcement work and the allocation of limited law enforcement resources, are decisions based on public policy considerations which are protected from tort liability by the discretionary function exception. The Government contends that BIA law enforcement officers typically expend their resources enforcing laws prohibiting violent crime and patrolling the highways deterring violent crime. *See* Affidavit of Elmer Four Dance, ¶ 2, Docket No. 20–8. Police Chief Felix testified that "We mainly concentrated on criminal activity, criminal offenses; the traffic violations; and then down to your domestics." *See* Deposition of Felix, Docket No. 36, p. 39. Officer Little Swallow testified that the enforcement of laws regarding abandoned vehicles would be on a list of priorities, "on the lower end, I would say. . . ." *See* Deposition of Little Swallow, Docket No. 36–6, p. 70.

The Court concludes, as a matter of law, that decisions of BIA law enforcement employees pertaining to the prioritization of the investigation and enforcement of laws, are directly related to policy analysis and

considerations of public policy. Such decisions clearly implicate competing and legitimate concerns of public safety and require determinations about priorities of serious threat to public health and the allocation of limited law enforcement resources. The United States Supreme Court has made it clear that the focus of the inquiry is whether the challenged actions are "susceptible to policy analysis" and not whether they were, in fact, the result of a policy analysis. *Gaubert*, 499 U.S. 315, 324–325, 111 S.Ct. 1267. *See Hughes v. United States*, 110 F.3d 765 (11th Cir.1997).

Based on the above reasoning, the Court concludes, as a matter of law, that the BIA law enforcement employees' challenged conduct is the type of conduct that the discretionary function was designed to protect. To conclude otherwise would be to engage in the type of "judicial second-guessing" that the discretionary function exception was designed to avoid. The Court finds that the second part of the discretionary function exception analysis has also been satisfied.

The Court expressly finds that the discretionary function exception applies to the conduct of the BIA. As a result, the Court lacks subject matter jurisdiction over the tort claims asserted by the Plaintiff. Both of the Plaintiff's remaining claims sound in tort and, as such, are barred by the discretionary function exception to liability under the Federal Tort Claims Act. *See Baker Group, L.C. v. Burlington Northern and Santa Fe Ry. Co.*, 451 F.3d 484, 488 (8th Cir.2006)(stating that a claim for breach of fiduciary duty is a tort claim).

## III. *CONCLUSION*

■ This case clearly falls within the statutory exception to the Federal Tort Claims Act as defined under the current state of the law in the Eighth Circuit Court of Appeals. The Plaintiff sustained serious injuries resulting in a litany of medical problems of which the Court is very sympathetic. However, the law in this circuit is clear concerning the application of the discretionary function exception in this case. There are no federal or state statutes, rules, regulations, or policies that mandate the specific manner in which BIA law enforcement employees are required to investigate and enforce the laws on the reservation. The prioritization of BIA law enforcement investigative activities are decisions protected by the discretionary function exception. The Court finds that it is unnecessary to address the Government's remaining grounds for summary judgment.

The Court **GRANTS** the Defendants' Motion for to Dismiss (Docket No. 18) and Smith's complaint is **DISMISSED** for lack of subject matter jurisdiction. Accordingly, the Court finds the Defendant's Motion for Summary Judgment (Docket No. 18) moot. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**