Mike **TONELLI**; Cindy
**Tonelli, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 94–2805.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1995.

Decided July 21, 1995.

Thomas Stevens Reavely, Des Moines, IA, argued, for appellant.

John E. Beamer, Des Moines, IA, argued, for appellee.

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

BEAM, Circuit Judge.

Alleging that postal workers repeatedly peeked at and pilfered the adult materials contained in their post office box, Mike Tonelli and his wife Cindy brought a Federal Tort Claims Act lawsuit against the United

States. The district court granted the government's motion for summary judgment, finding that a particular postal worker was not acting within the scope of his employment, and that the Tonellis' initial complaint to a desk clerk did not place the government on notice of the illegal behavior. The district court also dismissed the Tonellis' other allegations. We affirm in part and reverse in part.

## I. BACKGROUND

The following facts are either uncontested or represent the Tonellis' version. Mike and Cindy Tonelli rented Post Office Box 411 in Creston, Iowa. After advertising in a national magazine, the Tonellis used the post office box to send and receive material of an adult nature.

In June or July 1991, the Tonellis noticed that materials in their post office box had been opened and resealed. They reported the problem to Dwight Bowers, a postal employee at the Creston office. Bowers referred them to the postmaster, John McConkey. The Tonellis went to McConkey's office, but he was not there. Later, they came back to complain to McConkey, but McConkey was in a meeting. After these unsuccessful attempts, the Tonellis did not complain again until January 1992.

On January 27, 1992, the Tonellis met with Postmaster McConkey and discussed their mail problem. McConkey investigated their complaints. This investigation culminated in a post office "sting" conducted by two postal inspectors. During the sting, the postal inspectors observed a postal employee, Tim Sheets, removing first class mail from the Tonellis' post office box, opening some of the mail and removing some pictures. The postal inspectors arrested Sheets, and several days later he was placed on off-duty status. Sheets resigned, in lieu of termination, on February 10, 1992.

The Tonellis allege that other postal employees also knew about and tampered with the adult materials. Mike Tonelli stated in his affidavit that post office employees made comments to him about the "active" nature of Box 411. Jt.App. at 17. Cindy Tonelli stated in her affidavit that on "at least one occasion . . . I ran into a postal employee at a Hy–Vee grocery store. The way the postal employee starred [sic] at me, I was convinced he knew what was going on concerning the material in Box 411." Jt.App. at 20.

After exhausting administrative remedies, the Tonellis filed suit against the United States in federal district court. The Tonellis' complaint alleges negligent supervision, hiring and retention; invasion of privacy; conversion; and outrageous conduct. The district court granted the government's motion for summary judgment on all claims. The Tonellis appeal.

## II. DISCUSSION

■ We review a district court's decision to grant summary judgment de novo. *Grossman v. Dillard Dep't Stores*, 47 F.3d 969, 971 (8th Cir.1995). Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. "We may neither weigh evidence nor make credibility determinations at the summary judgment stage." *Grossman*, 47 F.3d at 971.

We have jurisdiction under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), which, subject to several exceptions, provides a limited waiver of sovereign immunity. Under the FTCA, a party can recover damages due to:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* The Tonellis assert that they have been injured due to Tim Sheets and other postal employees rifling through and converting items in their post office box, and the negligent acts of Postmaster McConkey and others in failing to properly hire and supervise postal employees.

### A. Conduct of Tim Sheets: Scope of Employment

■ The Tonellis first appeal the district court's determination that Tim Sheets was

not acting in the scope of his employment when he peeked at and pilfered some of the adult material contained in the Tonellis' post office box. The law of the state where the alleged negligent act occurred, Iowa, governs the scope of employment issue. *Brown v. Armstrong,* 949 F.2d 1007, 1012 n. 7 (8th Cir.1991). Iowa law provides that conduct of a servant is within the scope of employment only if: (1) it is of a kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the master. *Vlotho v. Hardin County,* 509 N.W.2d 350, 354 (Iowa 1993). Although usually a factual issue, determining whether the scope of employment includes an act that departs markedly from the employer's business may be a question of law. *Sandman v. Hagan,* 154 N.W.2d 113, 118 (Iowa 1968).

The Tonellis agree that opening and copying first class mail addressed to another person generally falls outside of the scope of a postal worker's employment. Indeed, opening and copying first class mail is a federal crime as well as a violation of post office procedure. *See* 18 U.S.C. § 1702; Jt.App. at 26. This determination, however, does not end our inquiry. " 'The fact that the servant's act is expressly forbidden by the master, or is done in a manner which he has prohibited, is to be considered in determining what the servant has been hired to do, but it is usually not conclusive, and does not in itself prevent the act from being within the scope of employment.' " *Vlotho,* 509 N.W.2d at 354 (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 70 at 502 (5th ed. 1984)).

■ The Tonellis contend that the post office tacitly authorized Sheets's actions by failing to stop the interference after the Tonellis provided notice of it. Such tacit authorization or apparent authority "may exist even if the act is illegal or specifically forbidden by the employer when the nature of the employee's duty is such that its performance would reasonably put the employer on notice that such an act may be committed." *Gogek*

*v. Brown Univ.,* 729 F.Supp. 926, 934 (D.R.I. 1990). *See Mayrath Co. v. Helgeson,* 258 Iowa 543, 139 N.W.2d 303, 306 (1966) (defining apparent authority to include "that which, although not actually granted, has been knowingly permitted by the principal."). The Tonellis argue that their 1991 complaint to the desk clerk, Dwight Bowers, put the post office on notice because Bowers himself had a duty to personally report this complaint.

■ As a general rule, notice to an agent is effective if the agent has a duty to receive that knowledge and report it to the principal. *Vermeer v. Sneller,* 190 N.W.2d 389, 393 (Iowa 1971); Restatement (Second) of Agency § 272 (1958). In concluding that the Tonellis' statements to Bowers did not put the post office on notice of the illegal behavior, the district court apparently did not consider the applicable Post Office Code of Conduct. The Code of Conduct suggests that the agent, Bowers, may have had a duty to personally report alleged violations of postal laws. Section 666.52 provides that "[v]iolations of postal laws, including irregular practices involving the handling of stamps, funds, accounts, or property will be reported immediately to the postal inspector in charge." Jt.App. at 45. It is not clear whether this code requires postal workers to report the infractions directly to an inspector, or whether sending the Tonellis to the Postmaster McConkey satisfied the code's requirement.

While we recognize that construction of the code is a question of law, we find the code ambiguous, at least as applied to this situation. It might be helpful to consider relevant extrinsic evidence when construing this code provision. Consequently, we reverse the grant of summary judgment on the claims relating to the conduct of Tim Sheets and remand these claims to the district court for a consideration of relevant extrinsic evidence.[1]

### B. Negligent Hiring, Supervision, and Retention of Postal Employees

The Tonellis next appeal the district court's grant of summary judgment on their claims regarding the hiring, supervision, and

---

1. Of course, at that time, the district court may make other factual findings which render the

retention of postal employees. The government contends that these claims are barred by the discretionary function exception of the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(a).

■ The discretionary function exception prohibits any FTCA claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." *Id.* Determining whether a particular governmental decision qualifies under the discretionary function exception is a two-step process. First, we must determine whether the challenged conduct involves the failure to follow a mandatory statute, rule or regulation. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988). If so, the discretionary function exception does not apply. *Id.* The Tonellis have not alleged that the post office failed to follow a specific mandatory rule. Next, we must determine whether the challenged governmental decision involves the type of discretion that Congress intended to shield from liability. *Id.* Judgment calls which involve public policy considerations are immune from liability even if the government agent making a particular decision did not consciously consider policy factors. *Id.* at 537, 108 S.Ct. at 1959; *United States v. Gaubert,* 499 U.S. 315, 325–26, 111 S.Ct. 1267, 1275–76, 113 L.Ed.2d 335 (1991).

■ Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception. *See, e.g., K.W. Thompson Tool Co. v. United States,* 836 F.2d 721 (1st Cir.1988). However, this action involves allegations that the post office failed to act when it had notice of illegal behavior. Failure to act after notice of illegal action does not represent a choice based on plausible policy considerations. Consequently, the unresolved notice issue renders summary judgment inappropriate on the employee supervision and retention claims. Thus, we reverse the district court's dismissal of these claims.

■ In contrast, the Tonellis' allegations of negligent hiring cannot survive the discretionary function inquiry. The post office's choice between several potential employees involves the weighing of individual backgrounds, office diversity, experience and employer intuition. These multi-factored choices require the balancing of competing objectives, and are of the "nature and quality that Congress intended to shield from tort liability." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). *Cf. Layton v. United States,* 984 F.2d 1496, 1501–02 (8th Cir.) (decision to use a particular contractor for timber-cutting requires balancing of competing objectives, and is protected by the discretionary function exception), *cert. denied,* — U.S. ——, 114 S.Ct. 213, 126 L.Ed.2d 170 (1993). Permitting FTCA claims involving negligent hiring would require this court to engage in the type of judicial second-guessing that Congress intended to avoid. We affirm the district court's dismissal of the negligent hiring claim.

### C. Conduct of Other Postal Employees

■ Finally, the Tonellis appeal the district court's decision granting summary judgment on their allegations regarding the conduct of other postal employees. The Tonellis contend that other unnamed employees knew of and disclosed the adult nature of the material contained in their post office box. They also allege that these other employees converted their property.

The Tonellis did not provide sufficient details regarding this alleged misbehavior by other postal employees. Their conclusory allegations, without more, do not amount to colorable FTCA claims. The district court properly granted summary judgment on these claims.

### III. CONCLUSION

The district court improperly granted summary judgment on the counts relating to the

---

notice issue moot. For instance, Bowers contends that there was no contact whatsoever by the Tonellis in June or July 1991. We assume the accuracy of the Tonellis' contentions in this

regard only for the purpose of reviewing the propriety of the grant of summary judgment for the defendants.

conduct of postal employee Sheets and those counts involving supervision and retention of postal employees. The court properly granted summary judgment on the Tonellis' other allegations. Accordingly, we affirm in part, reverse in part, and remand this action for proceedings consistent with this opinion.