# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1787

_____

Raphael Demery,　　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the District
　　　　　　　　　　　　　　　　*　of North Dakota.
United States Department of the　　*
Interior; Bureau of Indian Affairs,　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellees.　　　　　*

_____

Submitted: December 15, 2003

Filed: February 6, 2004 (Corrected 2/20/04)

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and FAGG, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Raphael Demery appeals the summary judgment entered against him in his action under the Federal Tort Claims Act (FTCA) against the United States Department of the Interior and the Bureau of Indian Affairs (hereinafter referred to collectively as BIA). For the reasons stated below, we affirm the district court's[1] order.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

## I.

This case arises out of the drowning death of Mr. Demery's wife which occurred when the snowmobile on which she was a passenger was driven into open water on Belcourt Lake. At the time of Ms. Demery's death, the BIA maintained an aeration system on the lake that prevented a portion of it from freezing. In order to provide a warning of the open water, the BIA had set up laths with red flags approximately thirty to fifty feet apart and had established a snow berm encircling the area. Additionally, large signs bearing the words "Danger, Open Water" were erected near at least two vehicle entrances to the lake.

Mr. Demery filed a wrongful death action against the BIA under the FTCA, *see* 28 U.S.C. § 1346(b), asserting that the BIA failed to maintain the aeration system properly, carefully, and continuously. He also claimed that the BIA failed to mark the open water properly and to warn the public of its dangers. Mr. Demery argued that the BIA's negligence caused his wife's death.

The BIA moved for summary judgment, asserting that the court lacked jurisdiction because of what is commonly called the discretionary-function exception to the FTCA, *see* 28 U.S.C. § 2680(a). The district court agreed with the BIA, finding that the "decision to aerate the lake, the design of the aeration system, whether to warn of the dangers of open water on the lake attributable to the aeration system, and the types of markings and warnings as well as the effectiveness of various types of warnings" were all decisions protected by the exception. Thus, the district court concluded, the BIA was immune from suit for its decisions regarding Belcourt Lake and the district court lacked jurisdiction to hear the case.

## II.

The FTCA generally waives the federal government's sovereign immunity for certain torts committed by government employees. The Act allows suits against the United States for "personal injury or death caused by the negligent or wrongful act

or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346 (b)(1). Thus, actions of the BIA's employees can expose the United States to tort liability for money damages. *See* 28 U.S.C. §§ 1346(b), 2671.

The FTCA's waiver of sovereign immunity is limited, however, by several exceptions, one of which removes the effects of some governmental decisions from the waiver in order to protect government policy making. *See Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998); *see also* 28 U.S.C. § 2680. Under this exception, the United States may not be sued under the FTCA for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. 2680(a).

In order to take advantage of the exception, the government must first establish that the employee's action "involve[d] an element of judgment or choice." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If a statute, regulation, or specific policy dictates the employee's actions, he or she cannot be said to be exercising discretion, and the exception to the waiver of sovereign immunity does not apply. *Id.; Appley Bros. v. United States*, 164 F.3d 1164, 1170 (8th Cir. 1999); *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 795-96 (8th Cir. 1993). Mr. Demery concedes that there are no specific or clear BIA policy statements regarding aerated lakes or the necessity or adequacy of warning signs to be located near them. Therefore, decisions regarding the maintenance of the aeration system, whether warnings of the open water would be posted, and the method and manner of those warnings were discretionary. *Cf. Chantal v. United States*, 104 F.3d 207, 210 (8th Cir. 1997).

Even if the employee's action was discretionary, however, the "court must [still] determine whether that judgment is of the kind that the discretionary function exception was designed to shield" before concluding that a suit is barred. *Berkovitz*, 486 U.S. at 536. "The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " *Id*. at 536-37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). The judgment or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account, for the exception to be triggered. *C.R.S.*, 11 F.3d at 801.

"When established governmental policy ... allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991); *see also Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 519 (8th Cir. 2001). The plaintiff must rebut this presumption. *Dykstra*, 140 F.3d at 796. Otherwise, the court will "presume the decision was based on public policy considerations." *Id*.

The BIA's maintenance of the aeration system clearly lends itself to policy analysis. The original decision to aerate the lake was made to promote Belcourt Lake's fish populations. This decision concerned protecting the environment and aquatic habitats, which are obvious issues of policy. The BIA's decisions about how it would go about aerating the lake and maintaining the open water were part of its original decision to aerate the lake. Mr. Demery has not and could not produce evidence that would take these decisions out of the realm of decisions that the discretionary function exception was designed to protect. The BIA is therefore immune from suit for decisions regarding the BIA's maintenance of the aeration system.

Mr. Demery argues, however, that once the BIA aerated the lake, it had a duty properly and adequately to warn the public of the danger that the open water created. The BIA actually made two separate discretionary decisions with respect to the warnings at Belcourt Lake: First, a BIA employee decided to warn the public about the danger; and second, he decided what kind of warnings to erect. Mr. Demery argues that while the first decision was protected by the discretionary-function exception, the second was not.

If Mr. Demery is correct, the federal government could not be held accountable for deciding not to issue warnings, but if it decided to do so (an act that Mr. Demery and this court agree would be socially beneficial *ceteris paribus*) it would be open to suit. A governmental agency would then be well advised never to decide to issue warnings in the first place when its decision is susceptible to policy analysis. This makes scant sense.

Beyond the common sense reason that Mr. Demery's argument must fail, our case law requires it. The BIA's first decision (whether to warn or not) is susceptible to a policy analysis that weighs the benefits of warning (e.g., increased safety) with its costs (e.g., the cost of erecting warnings). That decision satisfies *Berkovitz* because these are issues of social, political, and economic policy. *See C.R.S.*, 11 F.3d at 801-02; *Layton v. United States*, 984 F.2d 1496, 1504 (8th Cir. 1993), *cert. denied*, 510 U.S. 877 (1993). Mr. Demery concedes this point. The BIA's second decision (the manner and method used to warn) is also susceptible to policy analysis, however. *See Layton*, 984 F.2d at 1504-05; *Buffington v. United States*, 820 F. Supp. 333, 335-36 (W.D. Mich. 1992). As the sophistication of warning mechanisms increases, so does the monetary cost and the aesthetic displeasure associated with the warnings. *Cf. Chantal*, 104 F.3d at 212. The BIA could have weighed these policy factors when determining what kind of warning system to deploy. Mr. Demery has presented no evidence that rebuts the presumption that the BIA employee's two decisions were

grounded in policy. The decisions are thus protected by the discretionary-function exception.

On a final note, Mr. Demery argues that the district court incorrectly analogized to an Eighth Circuit case, *Jurzec v. American Motors Corp.*, 856 F.2d 1116 (8th Cir. 1988). We disagree and we believe that *Jurzec* provides valuable guidance on the bounds of the discretionary-function exception in the present context. In that case, the United States Postal Service sold used Jeeps that it no longer needed to private citizens accompanied by a warning that the vehicles could roll over. *Id*. at 1117. The plaintiff argued that the warning was inadequate, but the court found that the decision about the type of warning used was protected by the discretionary-function exception. *Id*. at 1119. The court held that because the Postal Service had established a policy of warning the public about the Jeep's roll-over potential, "[i]f the warning operate[d] to serve public safety, all that remain[ed were] matters of particular language, color and size of the warning. All these matters [were] clearly within the discretion of the Postal Service." *Id.*

In Mr. Demery's case, however, the BIA, unlike the Postal Service, had no policy of warning the public. If the BIA had a policy similar to that of the Postal Service, the court would look at whether the laths, berm, and signs served as a warning to determine whether the discretionary-function exception applied. If the BIA not only had a policy to warn, but had established a policy regarding the manner and method of those warnings, the discretionary-function exception would not apply because the employee would have had no discretion over the method and manner of the warnings required. *See id.* at 1119-20; *Mandel v. United States*, 793 F.2d 964, 967 (8th Cir. 1986); *Aslakson v. United States*, 790 F.2d 688, 692-93 (8th Cir. 1986). The BIA, however, had no policy to warn, adequately or otherwise. Thus, each of the BIA's decisions (whether to warn or not and, if so, how to warn) is protected by the discretionary-function exception because each of them is a discretionary decision grounded in policy analysis.

-6-

## III.

While we are sympathetic to Mr. Demery's personal tragedy, our case law is clear that the BIA's decisions to aerate Belcourt Lake and to erect what may have been inadequate warnings when there was no BIA directive requiring warnings are protected by the discretionary-function exception to the FTCA. We therefore affirm the district court's grant of summary judgment for lack of subject matter jurisdiction.

_____