# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3561
_____

Michael Daniel Croyle, by and through Sandra G. Croyle, as his parent and legal guardian; Sandra Croyle

*Plaintiffs - Appellants*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 27, 2018
Filed: November 9, 2018

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Michael Daniel Croyle, by his parent and legal guardian Sandra G. Croyle, sued under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, for negligent supervision and failure to warn of Mark N. Matson's sexual propensities. The district

court[1] dismissed the complaint based on sovereign immunity. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Tripler Army Medical Center is a large, tertiary Army hospital. Tripler's Department of Ministry and Pastoral Care (DMPC) provides religious services for patients, hospital staff, military personnel, and their families. In 1992, the Government contracted with the Theatine Fathers, a Catholic religious order, for the services of a priest. The Theatine Fathers assigned Matson to serve at Tripler.

The Government did not do a background check on Matson. It relied on an ecclesiastical endorsement by the Archdiocese of Military Services. The endorsement certified that an individual "[i]s a fully qualified member of the clergy of a religious faith group represented by the certifying Agency" and met "the requirements established by the Military Departments for appointment as an officer and a chaplain." To obtain the endorsement, Matson submitted information on his criminal history. Matson then had no prior convictions and no pending charges against him. Matson, however, had a history of sexual abuse allegations. In 1987, Matson was arrested for fondling two teenage boys, and in 1989, he was charged with the sexual assault of a child.

Under his contract, Matson's primary duty was to conduct Mass several times a week. At the request of families—without seeking prior approval from the DMPC—he conducted Confraternity of Christian Doctrine classes to help prepare children for their first Holy Communion. These were not required by the contract. As a child, Michael Croyle attended Mass at Tripler. He alleges that Matson sexually assaulted him six different times while escorting him to CCD classes after Mass.

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

Croyle, by his parent and legal guardian, sued the United States for negligence and negligent supervision. He alleges the Government knew or should have known about Matson's history of sexual abuse and was negligent in failing to warn families of his sexual propensities. Further, Croyle claims the Government breached its duty of care by failing to prevent Matson from having contact with children. The district court found the United States was entitled to sovereign immunity and dismissed the case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Croyle appeals.

In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach."). The district court here stated this was a factual attack. "We review a district court's decision to dismiss a complaint for lack of subject matter jurisdiction *de novo*, placing the burden of proving the existence of subject matter jurisdiction on the plaintiff." *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).

Sovereign immunity shields the federal government from suit absent its consent. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA waives the Government's sovereign immunity for some tort claims, authorizing private suits for negligence of Government agents. **28 U.S.C. § 1346(b)(1)**. The waiver is subject to exceptions. Under 28 U.S.C. § 2680(a), the Government may not be sued for the "exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." If the Government's conduct is within the discretionary function exception, "the federal court lacks subject matter jurisdiction." *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008).

A two-part test governs the discretionary function exception. *See Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007), *citing Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "First, the conduct at issue must be discretionary, involving 'an element of judgment or choice.'" *Riley*, 486 F.3d at 1032, *quoting Berkovitz*, 486 U.S. at 536. If a federal statute, regulation, or policy mandates a particular action, the discretionary function exception will not apply. *Berkovitz*, 486 U.S. at 536. Second, the judgment or choice must be "the kind that the discretionary function exception was designed to shield." *Id.* Congress enacted the exception to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). If the judgment is "susceptible to policy analysis," the discretionary function exception applies. *United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Demery v. U.S. Dep't of Interior*, 357 F.3d 830, 833 (8th Cir. 2004). If government policy allows the exercise of discretion, the court will "presume[] that the agent's acts are grounded in policy when exercising that discretion." *Demery*, 357 F.3d at 833. The plaintiff bears the burden of rebutting this presumption. *Id.*

As for the first requirement, Croyle does not challenge that it is a discretionary decision to retain Matson without warning of his sexual propensities. He does argue that the conduct is not within the discretionary function exception because no conceivable policy choice would allow Matson access to children without a warning.

The decision whether to warn of Matson's sexual propensities or to take other action to restrict his contact with children is susceptible to policy analysis. "[T]he decision to warn is, at its core, a policy decision." *Hinsley*, 516 F.3d at 673. *See also* ***Metter v. United States***, 785 F.3d 1227, 1232–33 (8th Cir. 2015); ***Demery***, 357 F.3d at 834. Likewise, supervising employees typically involves policy considerations. ***Tonelli v. United States***, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."). This court recognizes, however, that the "[f]ailure to act after notice" of an employee's ongoing illegal conduct is not "a choice based on plausible policy considerations." ***Id.***

In *Tonelli*, the facts included that the Government received notice of an employee's *ongoing illegal* conduct, specifying the timing, parties, and content of the notice. ***Id.*** at 494. Here, however, Croyle does not allege that the Government received notice of ongoing illegal conduct during Matson's employment at Tripler. Instead, Croyle alleges—upon information and belief—that the Government knew or should have known of Matson's pre-employment misconduct. While the Government's inaction after notice of ongoing illegal conduct is not subject to policy considerations, the supervision and retention of an employee with only allegations of pre-employment misconduct is subject to policy considerations. ***Id.*** at 496.

In *Hinsley*, Child Protective Services (CPS) placed a minor with a known history of sexually abusing children in a home with three young children, without warning their mother of his past abuse. *Hinsley*, 516 F.3d at 670–71. Hinsley sued CPS for negligence, arguing that the discretionary function exception did not apply

-5-

because "the strong policy interest in preventing child abuse demands that a warning be given." *Id.* at 673. This court disagreed, reasoning that CPS's decision "involves an effort to balance the interest in maintaining the confidentiality of [the minor's] past actions against the safety concerns that arise from placing a known sexual abuser in a home filled with children." *Id.* Therefore, the discretionary function exception applied. *Id.*

Like *Hinsley*, the Government here, in determining whether to warn families or take other protective action, could have balanced public and child safety with the need to protect Matson's reputation and confidentiality. *Id.* The Government could have also taken into account that Matson's contractual duties did not require direct contact with children. Other potential considerations include staffing shortages and the reputation of the DMPC and other religious personnel at Tripler, who could be harmed by association with Matson. *See generally Doe v. Holy See*, 557 F.3d 1066, 1085 (9th Cir. 2009) (the decision to retain a priest with sexual-abuse allegations was discretionary under the Federal Sovereign Immunities Act because the Holy See could have balanced the church's reputation, pastoral stability, and staffing shortages), *citing Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987) ("The existence of a discretionary function under the FSIA is generally analyzed under the principles developed pursuant to the Federal Tort Claims Act's ("FTCA") discretionary function exception.").

Balancing safety, reputational interests, and confidentiality is the kind of determination "the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The Government's conduct here is within the discretionary function exception. Though there may be disagreements how these interests should be balanced, "the FTCA does not empower judges to second guess such decisions via tort action." *Hinsley*, 516 F.3d at 673, *citing Gaubert*, 499 U.S. at 323.

\* \* \* \* \* \* \* \*

The judgment is affirmed.

_____