# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1683

———————————————

Lonnie Two Eagle, Sr.

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of South Dakota - Western

——————————

Submitted: November 17, 2022
Filed: January 11, 2023

——————————

Before BENTON and ERICKSON, Circuit Judges, and BUESCHER,[1] District
Judge.

——————————

BUESCHER, District Judge.

Lonnie Two Eagle, Sr., sued the United States pursuant to the Federal Tort
Claims Act (FTCA) after an employee of a hospital operated by the Indian Health

---

[1] The Honorable Brian C. Buescher, District Judge, United States District
Court for the District of Nebraska, sitting by designation.

Service (IHS) struck Two Eagle with his vehicle. The district court[2] concluded that it lacked subject-matter jurisdiction because United States' sovereign immunity applied to Two Eagle's claims. We affirm.

## I.    BACKGROUND

Rosebud Comprehensive Healthcare Facility (Rosebud Health) is a hospital operated by the IHS within the Rosebud Sioux Tribe reservation in South Dakota. Rosebud Health employed Chad Sully as a cook.

On August 5, 2019, Sully was scheduled to work a double shift at Rosebud Health. Sully started his workday at 6:00 a.m. and started his lunch break sometime between 12:45 p.m. and 1:00 p.m. While on his lunch break, Sully drove home to take a nap, stopped at a post office to check his mail, and then began driving back to Rosebud Health. Around 1:40 p.m., as Sully approached Rosebud Health on Hospital Drive—the only road leading to the hospital—he suffered a seizure and lost control over his vehicle. At that time, Two Eagle was operating a riding lawnmower near Hospital Drive and the hospital. Sully's vehicle struck Two Eagle, causing severe injuries. The district court found that the accident occurred off Rosebud Health's premises, although Two Eagle disputes that finding on appeal.

Prior to this tragic accident, Sully had suffered seizures in January, March, and April of 2019. On April 16, 2019, Sully had a telemedicine appointment with Dr. Matthew Smith, who provided telemedicine services at Rosebud Health through a contract executed between Rosebud Health and Avera eCare (Avera). Dr. Smith instructed Sully not to drive until Sully was seizure-free for six months. However, during a subsequent telemedicine appointment on July 23, 2019, Dr. Smith authorized Sully to resume driving in August of 2019, about two months earlier than Dr. Smith's previous instruction.

---

[2] The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, adopting the report and recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

Two Eagle filed suit against the United States pursuant to the FTCA. In his complaint, Two Eagle claimed that Sully was negligent by driving despite his prior seizures; Sully's supervisor was negligent for not preventing Sully from driving; and Dr. Smith was negligent for releasing Sully to drive. The United States moved the district court under Federal Rule of Civil Procedure 12(b)(1) to dismiss Sully's complaint for lack of subject-matter jurisdiction. The district court granted the motion, concluding that Sully was not acting within the scope of his employment when the accident occurred; the discretionary function exception applied to Two Eagle's claim regarding Sully's supervisor; and Dr. Smith was not a federal employee. Two Eagle appeals each of the district court's conclusions.

## II.    ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When the moving party makes a factual attack on the court's subject-matter jurisdiction, as the United States does here, the district court may look outside the pleadings and weigh evidence. *See Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990). The plaintiff bears the burden to establish subject-matter jurisdiction. *See Croyle by & through Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018). We review the district court's resolution of factual disputes for clear error and its decision on whether it lacks subject-matter jurisdiction *de novo*. *See Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016).

### A.    Scope of Employment

Count I of Two Eagle's complaint alleges that Sully acted negligently by driving despite his history of seizures. The district court dismissed this count for lack of subject-matter jurisdiction because Sully was not acting within the scope of his employment when the accident occurred. We agree.

Absent a waiver, sovereign immunity bars claims against the United States. *See Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011). By passing the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008). Subject to certain exceptions, the United States will be liable for the torts committed by federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

As an initial matter, Two Eagle asserts that the district court erred by deciding the scope-of-employment issue on a Rule 12(b)(1) motion to dismiss because it is intertwined with the merits of his negligence claim, necessitating a trial on the merits to resolve it. *See Magee v. United States*, 9 F.4th 675, 682 (8th Cir. 2021) (noting that a jurisdictional issue may be "so bound up with the merits that a full trial on the merits is needed to resolve the question"). To the contrary, in an FTCA negligence case, whether the employee was acting within the scope of employment is a threshold jurisdictional issue properly resolved via a Rule 12(b)(1) motion. *See id.* at 680; *see also Brownback v. King*, 141 S. Ct. 740, 746, 749 (2021) (characterizing "acting within the scope of . . . employment" under the FTCA as a "jurisdictional element"). Whether Sully was acting within the scope of employment is a separate question from whether he acted negligently. *See Magee*, 9 F.4th at 682 ("Whether [the tortfeasor's] conduct was within the scope of his employment is unrelated to the merits question of whether his conduct was negligent."); *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (characterizing the scope-of-employment issue as "unrelated" to whether conduct is negligent). The district court did not err in ruling on the scope-of-employment issue.

Turning to the question of whether Sully was acting within the scope of his employment, Two Eagle emphasizes that the accident occurred close to Rosebud Health and that Sully had been traveling on Hospital Drive, which is the only road leading to the hospital. Two Eagle also claims that Sully was being paid at the time

-4-

of the accident. In response, the United States stresses that Sully was driving back to work in his own vehicle during his lunch break when the accident occurred. The United States argues that Sully's actions solely served his own interests and did not further Rosebud Health's business.

Under the FTCA, when the allegedly tortious conduct occurs within the boundaries of both a tribal reservation and a state, the law of the state applies. *See Sorace v. United States*, 788 F.3d 758, 763 (8th Cir. 2015). Thus, South Dakota law governs the scope-of-employment issue in this case.

"In South Dakota, '[t]he ancient doctrine of respondeat superior is well established as holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.'" *Tammen v. Tronvold*, 965 N.W.2d 161, 168–69 (S.D. 2021) (quoting *Kirlin v. Halverson*, 758 N.W.2d 436, 444 (S.D. 2008)). South Dakota adheres to the "going and coming rule, which precludes an employer's liability, as a matter of law, when an employee is 'going to and coming from work[.]'" *Id.* at 169 (quoting *S. Dakota Pub. Entity Pool for Liab. v. Winger*, 566 N.W.2d 125, 131 (S.D. 1997)). Under South Dakota law, two inquiries guide the application of the going and coming rule: "(1) whether the employer had control over the employee's commute, and (2) whether the employer derives a benefit from the employee's commute." *Id.* at 170. Ultimately, if the plaintiff's injuries resulted from "risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer[,]" the employer is not liable. *Id.* at 171 (quoting *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963)).

We agree with the United States that South Dakota's "going and coming rule" applies in this case. The accident occurred while Sully was returning to work after taking his lunch break. Rosebud Health had no control over Sully driving back from his lunch break and derived no benefit from it. The fact that Sully was on the only road leading to the hospital does not mean that Rosebud Health controlled Sully's travel. Sully's errands during his break did not benefit Rosebud Health because they

were unconnected to his duties as a cook. *See id.* at 170. Although Two Eagle contends that Rosebud Health was paying Sully at the time of the accident, even if this was the case, this does not demonstrate that his activities at the time were closely connected with what he was employed to do at Rosebud Health. *Cf. Kirlin*, 758 N.W.2d at 444 ("[W]ithin the scope of employment . . . refer[s] to those acts which are so closely connected with what the servant is employed to do . . . ." (first and third alterations in original) (internal quotation marks omitted) (quoting *Deuchar v. Foland Ranch, Inc.*, 410 N.W.2d 177, 180 (S.D. 1987))). Two Eagle's injuries, unfortunate as they may be, arose from "risks and hazards to which all members of the traveling public are subject"; they did not arise from "risks and hazards having to do with and originating in" Sully's work for Rosebud Health. *See Tammen*, 965 N.W.2d at 171.

Two Eagle urges us to apply the "premises exception" to the going and coming rule. This exception, which has its genesis in workers' compensation law, permits recovery for injuries suffered while an employee is traveling to and from work if the employee is on the employer's premises. *See* 2 Larson's Workers' Compensation Law § 13.01 (2022) (describing the "premises rule"); *see also White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998) (stating that the "premises rule" "provides that an employee's injuries are compensable when sustained on the employer's premises while the employee is going to or from work"). Two Eagle also cites South Dakota workers' compensation cases in which the South Dakota Supreme Court concluded that the employees in those cases were entitled to compensation for injuries suffered on their employer's premises after the employees left their workstations. *See Fair v. Nash Finch Co.*, 728 N.W.2d 623, 626, 632 (S.D. 2007) (holding that injuries suffered when an employee tripped over a rug at her workplace's exit were compensable); *Steinberg v. S. Dakota Dep't of Mil. & Veterans Affs.*, 607 N.W.2d 596, 606 (S.D. 2000) (holding that injuries suffered when an employee slipped on ice on a road within her employer's premises were compensable); *Howell v. Cardinal Indus., Inc.*, 497 N.W.2d 709, 712 (S.D. 1993) (holding that injuries suffered in the employer's parking lot were compensable).

A threshold problem with Two Eagle's argument that the premises exception applies is that the district court found that the accident did not occur on Rosebud Health's property. Two Eagle fails to show that this finding was clearly erroneous. Because the accident did not occur on hospital property, the "premises exception" is inapplicable. The district court correctly concluded that Sully's act of driving back to the hospital during his lunch break fell outside the scope of his employment. Thus, the district court properly dismissed Count I, which alleges Rosebud Health's liability for Sully's negligence, for lack of subject-matter jurisdiction.

## B.    Discretionary Function Exception

In Count II, Two Eagle claims that Sully's supervisor, William Wonnenberg, knew about Sully's seizures and should have ensured Sully was not driving before being cleared by his doctors. The district court concluded that the discretionary function exception to the United States' waiver of sovereign immunity under the FTCA applied. We agree.

Under the discretionary function exception, the United States retains sovereign immunity against claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of . . . an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In deciding whether this exception applies, we first ask "whether the challenged conduct or omission is truly discretionary, that is, whether it involves an element of judgment or choice instead of being controlled by mandatory statutes or regulations." *Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019) (internal quotation marks omitted) (quoting *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013)). If there is no mandatory statute or regulation, "the action is considered a product of judgment or choice and the first step is satisfied." *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 673 (8th Cir. 2008). Under the second step, we inquire if the choice is susceptible to policy analysis, meaning that it was "based on considerations of social, economic, and political policy." *Buckler*, 919 F.3d 1038, 1045 (quoting *Herden*, 726 F.3d at 1047). If step one is satisfied "a

presumption arises that the discretion is grounded in policy considerations, and the plaintiff 'must rebut this presumption.'" *Id.* at 1046 (quoting *Herden*, 726 F.3d at 1048).

Assuming Wonnenberg was aware of Sully's seizures, Two Eagle does not point to any mandatory statute or regulation requiring Wonnenberg to take any action to ensure Wonnenberg did not drive. Therefore, Wonnenberg's failure to act involved an element of judgment or choice. *See Buckler*, 919 F.3d at 1045. Because Wonnenberg's failure to act was "truly discretionary," a presumption arises that Wonneberg's discretion is grounded in policy considerations. *See id.* at 1046. Two Eagle fails to rebut this presumption. As this court has previously recognized, decisions related to the supervision of subordinates ordinarily involve policy considerations. *See Croyle*, 908 F.3d at 382; *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995). In this case, Wonnenberg monitoring Sully's ability to get to work implicates the allocation of staff time, hospital resources, the confidentiality of Sully's medical issues, and the efficiency with which Wonnenberg accomplishes his supervisory duties. These all involve policy considerations. *See Buckler*, 919 F.3d at 1045. The district court correctly concluded that the discretionary function exception deprived it of subject-matter jurisdiction over Two Eagle's claim.

## C. Independent Contractor Exception

In Count III, Two Eagle claims that Dr. Smith was negligent by authorizing Sully to drive despite previously directing Sully to refrain from driving until he was seizure-free for six months. The district court concluded that it lacked subject-matter jurisdiction over this claim because Dr. Smith was an independent contractor rather than an employee of the Federal Government.

The FTCA's waiver of sovereign immunity does not extend to the torts of government contractors. *See Knudsen v. United States*, 254 F.3d 747, 750 (8th Cir. 2001); 28 U.S.C. § 2671. Distinguishing between a federal employee and a contractor requires analyzing "the extent to which the government has the power to

supervise the individual's day-to-day operations." *Knudsen*, 254 F.3d at 750 (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)). "A critical element" in this analysis is the Federal Government's power "to control the detailed physical performance of the contractor." *Orleans*, 425 U.S at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)).

Dr. Smith provided telemedicine services at Rosebud Health through a telemedicine contract executed between Rosebud Health and Avera. In 2019, Rosebud Health and Avera entered into a Distant Site Provider Credentialing and Privileging Agreement (Privileging Agreement), in which Rosebud Health agreed to rely on Avera's credentialing and privileging decisions for physicians providing telemedicine services under the telemedicine contract. The agreement also states that Avera furnishes telemedicine services as an independent contractor.

In arguing that Dr. Smith is a federal employee, Two Eagle focuses on a provision in a funding agreement for a self-determination contract[3] for solid-waste disposal executed between Rosebud Health and the Department of Health and Human Services. The provision states that a health care practitioner who has been granted clinical privileges in a health facility operated by the Rosebud Sioux Tribe "shall be considered an employee of the Federal Government for the purposes of the [FTCA]." Two Eagle maintains that this provision strongly indicates that Dr. Smith is a federal employee because he has privileges at Rosebud Health. We disagree.

FTCA liability may depend on whether an agreement shows that the parties intended to establish an employer-employee relationship between the United States and the alleged tortfeasor. *See Logue*, 412 U.S. at 529–30 (noting that "the contract actually executed between the parties" showed that the alleged tortfeasors were not federal employees); *Ohlsen v. United States*, 998 F.3d 1143, 1157–58 (10th Cir.

---

[3] A self-determination contract is a contract between a tribal organization and the United States under which the tribal organization agrees to undertake responsibility "for the planning, conduct, and administration of programs or services that are otherwise provided to" tribal members. 25 U.S.C. § 5304(j).

2021) (considering whether a contract with the Federal Government showed an intent to create an employer-employee relationship); *see also Sisto v. United States*, 8 F.4th 820, 826 (9th Cir. 2021) (holding that the FTCA did not apply because the contract expressly stated that the medical services provider was an independent contractor and that the provider's physicians had no employment relationship with the Federal Government). In this case, the agreement Two Eagle cites provided funding for solid-waste disposal at Rosebud Health. Moreover, the provision highlighted by Two Eagle refers to physicians with privileges at a facility operated by the Rosebud Sioux Tribe. Rosebud Health is operated by the IHS, not the Rosebud Sioux Tribe. Therefore, nothing in the agreement shows that it intended to make physicians provided by Avera to Rosebud Health through the telemedicine contract federal employees rather than contractors.

Two Eagle also points to provisions in the privileging agreement stating that telemedicine providers must abide by Rosebud Health's policies and procedures when providing services. According to Two Eagle, this shows that Rosebud Health exercised sufficient control over telemedicine providers to render them federal employees. But the privileging agreement expressly says that Avera is an independent contractor. *See Sisto*, 8 F.4th at 826 (explaining that the FTCA did not apply when the contract expressly stated that the medical services provider was an independent contractor). The requirement in the privileging agreement that telemedicine providers abide by Rosebud Health's policies and procedures is inadequate to show that Rosebud Health "control[led] the detailed physical performance of the [telemedicine providers]." *Logue*, 412 U.S. at 528; *cf. Charlima, Inc. v. United States*, 873 F.2d 1078, 1081 (8th Cir. 1989) (requiring an individual to "comply with the FAA regulations" was insufficient to show that the Federal Government had "sufficient control" over the individual's work performance). Moreover, as the district court found, the privileging agreement did not grant Rosebud Health the authority to hire or fire Dr. Smith nor did Rosebud Health pay Dr. Smith directly under this agreement. It was also Avera's responsibility under the privileging agreement to ensure that the telemedicine providers had liability insurance and met certain privileging and credentialing standards. In sum, rather

than showing day-to-day control of Dr. Smith's activities and an intent to create an employer-employee relationship, the privileging agreement demonstrates that Dr. Smith was, at most, an employee of Avera. *See Bernie v. United States*, 712 F.2d 1271, 1273 (8th Cir. 1983) ("It is clear that [the doctors] were employees of independent contractors holding service contracts with the government and were not acting as federal employees.").

Two Eagle finally refers us to Rosebud Health's bylaws, which require Rosebud Health to give the results of an internal review of a telemedicine provider's performance to Avera and vests Rosebud Health's governing board with final authority to manage clinical privileges. A periodic review process and authority over privileging fails to measure up to the amount of oversight contemplated by the "day-to-day control" test. *See Duplan v. Harper*, 188 F.3d 1195, 1201 (10th Cir. 1999) (stating that the government requiring a contract doctor to "meet minimum qualifications" and conducting reviews of the doctor's performance fails to establish an employer-employee relationship).

Because it is Two Eagle's burden to establish subject-matter jurisdiction, *see Croyle*, 908 F.3d at 381, he must adduce evidence showing that Rosebud Health had sufficient control or supervision over Dr. Smith's work. He has not done so. Therefore, the district court correctly concluded that it lacked subject-matter jurisdiction over this claim.

## III.  CONCLUSION

For these reasons, we affirm the district court's dismissal of Two Eagle's claims for lack of subject-matter jurisdiction.

_____